IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION


U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 1 2020

CLERK, U.S. DISTRICT COURT
By_____
            Deputy

RUSSELL SMITH,                §
                             §
        Plaintiff,           §
                             §
VS.                          §   NO. 4:19-CV-940-A
                             §
BLAS A. HERNANDEZ, ET AL.,   §
                             §
        Defendants.          §

<u>MEMORANDUM OPINION & ORDER</u>

Came on for consideration the motion by defendants, Blas A.
Hernandez ("Hernandez") and City of Southlake ("Southlake"), to
dismiss the claims brought against them by plaintiff, Russell
Smith, in the above-captioned action.  After considering the
motion and brief in support, Hernandez's supplemental motion and
brief, plaintiff's response brief, the reply, the record, and
the applicable legal authorities, the court finds that the
motion should be granted in part and denied in part.

I.

<u>Factual Background</u>

This § 1983 action arises out of an interaction between
plaintiff and Hernandez, a corporal of the Southlake Police
Department, who plaintiff alleges violated his Fourth Amendment
rights.  Doc.1[1] ¶¶ 2, 5.  Plaintiff claims he was standing on a

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

public sidewalk and taking pictures of routine flaring at the Magellan pipeline plant in Southlake, Texas ("the facility") and that an individual saw him and called 911 to report a suspicious individual photographing the facility. Id. ¶¶ 6-7. The 911 caller never stated that the suspicious individual had trespassed onto the property. Id. ¶ 8. Hernandez, investigating the tip, approached plaintiff and incorrectly stated that he was responding to a 911 call about an individual going through a gate at the facility, which plaintiff denied. Id. ¶¶ 9-17.

Plaintiff refused to identify himself and insisted that Hernandez lacked a legal basis for the investigatory detention. Id. ¶¶ 26, 34. Hernandez handcuffed plaintiff. Id. ¶ 36. He then contacted the 911 caller, who clarified that plaintiff did not go behind the gate. Id. ¶¶ 52-57. Next, Hernandez opened plaintiff's backpack without plaintiff's consent, removed plaintiff's wallet, and used the driver's license therein to identify plaintiff. Id. ¶¶ 64-66, 69-73. After being told by dispatch that plaintiff was clear of any warrants, Hernandez told plaintiff that he was free to go and released him from the handcuffs. Id. ¶¶ 79, 81.

II.

## Procedural Background

On November 7, 2019, plaintiff filed his complaint,
alleging, pursuant to 42 U.S.C. § 1983, that Hernandez violated
his Fourth Amendment rights by illegally detaining him and
searching his backpack, and that Southlake is liable for
policies of (I) inadequate supervision and training in the
police force and (II) unconstitutional stops, detentions,
searches, and arrests.  Doc. 1 ¶¶ 119-133 (detention), 134-150
(search), 151-162 (policies).  On January 6, 2020, after
defendants answered and filed the motion to dismiss, the court
ordered plaintiff to file a supplemental pleading providing
allegations which support the inapplicability of Hernandez's
qualified immunity defense and for Hernandez to file a
supplement to the motion to dismiss in response to plaintiff's
supplemented pleading.  Doc. 18.  The parties complied, Doc. 19,
Doc. 20, and also filed a response and reply, Doc. 21, Doc. 22,
Doc. 23.

III.

## Grounds of the Motion

Defendants argue that plaintiff's claims should be
dismissed for failure to state a claim upon which relief may be
granted.  Doc. 12 at 2-4 (citing Fed. R. Civ. P. 12(b)(6)).  The

motion states that the claims against Southlake fail because plaintiff did not plead facts to establish the elements required to state a claim against a municipality under § 1983. Id. at 4-10. The motion also states that the claims against Hernandez fail because he is shielded by qualified immunity. Id. at 10-20.

IV.

Applicable Law

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Id. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S.

4

662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

V.

Analysis

Defendants argue that plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted. The court finds that dismissal is warranted as to the claims against Southlake and the illegal detention claim against Hernandez.

A.  The claims against Southlake should be dismissed.

Plaintiff argues that under § 1983, Southlake is liable for policies of (I) inadequate supervision and training in the

5

police force and (II) unconstitutional stops, detentions, searches, and arrests. Doc. 1 ¶ 152. Both claims should be dismissed for failure to state a claim upon which relief may be granted.

    1.  Legal Principles

Municipalities, including cities, may be held liable under § 1983. Hampton Co. Nat'l Sur., LLC v. Tunica Cty., 543 F.3d 221, 224 (5th Cir. 2008). However, § 1983 does not allow a governmental entity to be held vicariously liable for the actions of its officers under a theory of respondeat superior. 42 U.S.C. § 1983; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Instead, a governmental entity may be liable under § 1983 if the execution of one of its policies or customs deprives a plaintiff of a constitutional right. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978). To hold a city liable under § 1983 thus requires the plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." Spiller v. Texas City Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted).

To meet that requirement, a plaintiff must allege: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or

custom." Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir. 2005) (internal citations omitted). Moreover, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" Pena v. City of Rio Grande City, 879 F.3d 613, 622 (5th Cir. 2018) (quoting Spiller, 130 F.3d at 167).

Defendants argue that plaintiff's claim against Southlake should be dismissed because, inter alia,[2] plaintiff failed to allege in nonconclusory terms that a policymaker was involved, Doc. 12 at 5-6, and that a policy or custom existed, id. at 7-9. The court agrees that the claims should be dismissed.

2.    Plaintiff fails to plead facts about a policymaker.

Defendants argue that plaintiff's claims against Southlake should be dismissed because, although he alleges that the City Council, City Manager, and Chief of Police were Southlake's policymakers, he does so in a conclusory, boilerplate fashion. Doc. 12 at 5 (citing Doc. 1 ¶ 162). The court agrees.

First, plaintiff fails to explain how the City Manager and Chief of Police are policymakers. Generally, a city employee is

---

[2] Defendants also allege that plaintiff failed to allege in nonconclusory terms causation and a constitutional harm. Doc. 12 at 6-7, 9-10.

not a policymaker unless the governmental entity has delegated exclusive policymaking authority to the employee and cannot review his or her decisions. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). "Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." Id. at 130. Plaintiff has not alleged that the Police Chief and City Manager have exclusive policymaking authority or that the City Council delegated such authority to them.

Second, plaintiff fails to plead facts to support his conclusion that the City Council – or either of the other purported policymakers – was knowingly involved in the alleged policy or custom. The complaint states,

> The policymakers . . . were aware of the policies, practices, customs, including retention of Defendant Hernandez, and failure to train . . . and knowingly ratified these policies, practices, customs, retention of Defendant Hernandez, and failures to train with deliberate indifference to the constitutional violations that these policies, practices, customs, retention of Defendant Hernandez, and failures to train were directly causing.

Doc. 1 ¶ 162.

A City Council may violate rights either by direct orders or by setting a course of action for city employees which, when followed, interferes with an individual's rights. Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984). A course of

action may be set by the Council's own promulgation or by its acceptance of city employees' conduct. Id. Here, plaintiff seems to argue that the City Council accepted the conduct because he contends that the Council was "aware" of the alleged policy or custom and "knowingly ratified" it. Doc. 1 ¶ 162. However, plaintiff does not provide any facts to support this conclusion. Such conclusory statements are inadequate to state a claim for relief. Iqbal, 556 U.S. at 678; Spiller, 130 F.3d at 167.

The court notes that plaintiff attempts to impute to Southlake knowledge of Hernandez's alleged likelihood to violate individuals' rights by listing instances of Hernandez scoring poorly on tests and violating department policies. Doc. 1 ¶ 90, 110. Even if such instances permitted the court to infer the existence of a policy or custom, plaintiff would still fail to allege that a policymaker had actual or constructive knowledge of such policy or custom. "Actual knowledge may be shown through discussions at council meetings or receipt of written information." Pineda v. City of Houston, 291 F.3d 325, 330 (5th Cir. 2002) (internal quotation and citation omitted). Constructive knowledge may be attributed to the City Council if it "would have known of the violations if it had properly exercised its responsibilities," such as in situations where the

violations were so widespread as to be the subject of public discussion or publicity.  Id.  The complaint does not state that the purported policy or custom was ever discussed at council meetings, that documents relaying information about it were sent to or received by the Council, or that had the Council would have learned about it had it properly exercised its responsibilities.

Because plaintiff failed to plead facts regarding the involvement of a knowing policymaker, he has failed to state a claim upon which relief may be granted against Southlake, and such claims should be dismissed.

### 3. Plaintiff fails to plead facts regarding a policy or custom of Fourth Amendment violations.

Defendants also argue that plaintiff's claims against Southlake should be dismissed because he fails to allege facts regarding the existence of a policy or custom.  Doc. 12 at 7-9. Defendants are correct as to the purported custom of permitting Fourth Amendment violations.

An "official policy" is "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority."  Pineda, 291 F.3d at 328.  In the absence of a formal policy, a claim against a municipality may be based on a

10

custom.  A custom is "a pattern of similar incidents in which
citizens were injured or endangered by intentional or negligent
police misconduct and/or that serious incompetence or
misbehavior was general or widespread throughout the police
force."  Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th
Cir. 1992) (quotation and citation omitted).  Plaintiff does not
plead the existence of any official policy because he fails to
identify a policy statement, ordinance, regulation, or decision
officially adopted and promulgated by the municipality.
Therefore, to state claims upon which relief may be granted,
plaintiff must plead facts to support the conclusion that a
custom existed as to each of his claims against Southlake.

Plaintiff does not provide facts to support the conclusion
that a custom existed that allowed unconstitutional detentions,
arrests, and searches.[3]  Plaintiff alleges no facts to show a
pattern of events similar to his interaction with Hernandez, nor
facts regarding widespread incompetence or misbehavior in the
police force.  Id.  The complaint states no facts to show that

---

[3] Plaintiff does allege facts to support his conclusion that a custom of inadequate supervision and training
of Southlake police officers exists.  He alleges that (I) the Southlake Police Department allowed
Hernandez to enforce and administer the law despite his repeated low scores on both formal and informal
tests, Doc. 1 ¶¶ 88-103; (II) the Southlake Police Department did not require Hernandez to attend a
training in 2018 and the first two months of 2019, id. ¶¶ 104-106; and (III) Southlake "knowingly failed
to provide or require training on the law to officers who had shown a deficiency in the law and who were
a danger to the constitutional rights of its citizens," id. ¶ 107.  However, because he failed to plead the
existence of a policymaker with knowledge of the custom, this claim should still be dismissed.

plaintiff's experience was not an isolated incident, and allegations of isolated incidents are insufficient to establish a custom or policy.  Id.  Instead, plaintiff makes conclusory statements such as, "At the time of the incident, Defendants were acting pursuant to a custom, policy, practice, and/or procedure of the Defendant Southlake, Texas and the Southlake Police Department."  Doc. 1 ¶ 159.  Because plaintiff relies on vague generalities and conclusions, he has not sufficiently alleged a custom of permitting Fourth Amendment violations.  He has therefore failed to nudge his claim across the line from conceivable to plausible at required by Rule 8, and his claim should be dismissed.  See Twombly, 550 U.S. at 555, 570.

B.  The illegal detention claim against Hernandez should be dismissed.

Defendants argue that plaintiff's § 1983 claim against Hernandez for a detention in violation of the Fourth Amendment should be dismissed because Hernandez is entitled to qualified immunity.  Doc. 12 at 10-20; Doc. 20 at 1-9.  The court agrees.

1.  Legal Principles

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  For a right to be

"clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40.

In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire, 957 F.2d at 1273. Allegations of malice or mistake in judgment will not defeat immunity if the defendant acted in an

objectively reasonable manner.  <u>Malley</u>, 475 U.S. at 341; <u>Hunter</u> <u>v. Bryant</u>, 502 U.S. 224, 229 (1991).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense.  <u>Kovacic v.</u> <u>Villareal</u>, 628 F.3d 209, 211 (5th Cir. 2010); <u>Foster v. City of</u> <u>Lake Jackson</u>, 28 F.3d 425, 428 (5th Cir. 1994).  Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate.  <u>White v. Pauly</u>, 137 S.Ct. 548, 551 (2017).  While "general statements of the law are not inherently incapable of giving fair and clear warning to officers," the unlawfulness must be apparent in light of pre-existing law.  <u>Id.</u> (quotations and citations omitted).  Thus, outside of "an obvious case," failure to identify a prior case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will defeat the plaintiff's ability to overcome a qualified immunity defense.  <u>Id.</u> at 198-99; <u>Hanks v. Rogers</u>, 853 F.3d 738, 747 (5th Cir. 2017).

> 2.   <u>Plaintiff failed to show that it is beyond debate that</u>
>      <u>Hernandez lacked reasonable suspicion to make the</u>
>      <u>investigatory stop.</u>

Hernandez argues that plaintiff fails to carry his burden regarding the illegal detention claim because plaintiff does not provide case law particularized to the facts surrounding the

14

investigatory stop. Doc. 20 at 8-9. Instead, plaintiff relies on more general precedent establishing the contours of the investigatory stop, such as Terry v. Ohio, 392 U.S. 1 (1968), and its progeny. Doc. 19 ¶ 8. Because he fails to cite factually similar case law, plaintiff does not carry his burden to show that no reasonable officer would believe that the stop was justified. See Malley, 475 U.S. at 341.

Plaintiff cites precedent only to show that at the time of the stop, it was "clearly established" (I) that an officer may conduct an investigatory stop only if, under a totality of the circumstances, he "has a reasonable suspicion supported by articulable facts that criminal activity may be afoot," Doc. 19 ¶ 8 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000)), and (II) that the doctrine of false arrest existed, id. ¶ 21 (citing Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975); Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000); Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988)). Plaintiff's explanation of the law is correct, but such general statements do not place beyond debate the question of whether Hernandez lacked reasonable suspicion.

Reasonable officers could disagree as to whether the Terry stop was justified by reasonable suspicion. A reasonable

15

officer could believe that reasonable suspicion of terrorist activity existed under a totality of the circumstances. First, the nature of the facility makes it a potential terrorist target because the jet fuel there is highly flammable. See Doc. 20 at 2. Second, a gas pipeline in Plano, Texas was subject to an attempted lone-wolf attack in 2015. Id. at 3. Third, a 911 call reported a suspicious individual taking photographs of the facility. Finally, the individual matching the 911 caller's description refused to identify himself when asked by police.

Under these facts, a reasonable officer could conclude that an investigatory stop was supported by reasonable suspicion that plaintiff was preparing to attack the facility. See Turner v. Lieutenant Driver, 848 F.3d 678, 691-92 (5th Cir. 2017) (finding a reasonable officer could conclude that he had reasonable suspicion that an individual was "casing the station for an attack" where the individual was filming a police station while standing on the sidewalk); Newell v. Cty. of San Diego, No. 3:12-cv-1696-GPC-BLM, 2014 WL 2212136, *6 (S.D. Cal. May 28, 2014) (finding an officer had reasonable suspicion where an individual was seen taking photographs of courthouse-employee and law-enforcement vehicles from a public area).

3. **Plaintiff failed to show that it is beyond debate that the stop's duration violated his Fourth Amendment rights.**

Plaintiff also argues that that the length of the detainment violated his Fourth Amendment rights because he was not released immediately after Hernandez verified that he did not trespass. Doc. 22 ¶ 39. Once again, plaintiff fails to cite any factually similar case law, and this is not an obvious case. In fact, a reasonable officer would likely conclude that the stop's duration did not violate plaintiff's rights. An individual need not have trespassed to be case a location for an attack. See Turner, 848 F.3d at 691-92 (suspect stood on a public sidewalk). Further, an officer may continue detaining an individual to confirm that they lack warrants, even after learning that the reasonable suspicion that justified the original stop has been disproven. See Rodriguez v. United States, 575 U.S. 348, 355 (2015); see also Turner, 848 F.3d at 695 n.85 (noting that officers cannot prolong an investigative detention unless they have an investigatory purpose).

Plaintiff also argues, without citing factually similar precedent, that he should have been released immediately after Hernandez confirmed that he lacked outstanding warrants. Doc. 22 ¶ 39. However, he was told he was free to go within two minutes of such confirmation, and it only took that long because

17

plaintiff continued to ask Hernandez questions, which Hernandez attempted to answer. Doc. 19, Ex. A at 25:17-27:09.

Because he failed to show that it is beyond debate that the basis or duration of the stop violated his Fourth Amendment rights, plaintiff fails to overcome Hernandez's qualified immunity defense, and his illegal detention claim should be dismissed.

C.  The illegal search claim against Hernandez should not be dismissed.

Hernandez also argues that plaintiff's § 1983 claim against Hernandez for a search in violation of the Fourth Amendment should be dismissed because Hernandez is entitled to qualified immunity. Doc. 20 at 8-9. The court disagrees.

As with the investigatory stop, plaintiff cites general principles regarding searches during Terry stops and does not provide factually similar case law. Doc. 19 ¶¶ 31-33. Once again, Hernandez asserts that plaintiff therefore failed to carry his burden as to the search of his backpack. Doc. 20 at 9. However, the general principles cited by plaintiff are sufficient to give a reasonable officer a "fair and clear warning" as to the illegality of Hernandez's search. White, 137 S.Ct. at 552.

As plaintiff points out, during a Terry stop, an officer may conduct a pat-down search to determine whether the suspect

18

is carrying a weapon if he reasonably believes the suspect may be armed. United States v. Jenson, 462 F.3d 399, 407 (5th Cir. 2006); Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). However, "any search whatever for anything but weapons" is not permitted during a Terry stop. Ybarra v. Illinois, 444 U.S. 85, 93-94 (1979). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry." Dickerson, 508 U.S. at 373.

Here, a reasonable officer would know, based on the general precedent cited by plaintiff, that the search violated a clearly established right. A reasonable officer would understand that Dickerson does not permit a search for identification during a Terry stop because identifying a suspect is not necessary to determine if the suspect is armed.[4]

The facts show that Hernandez conducted a search that went beyond what was necessary to determine whether plaintiff was armed. While plaintiff was handcuffed and after Hernandez had conducted a pat-down of plaintiff's clothing, Hernandez squeezed plaintiff's backpack and explained multiple times that he was

---

4 Even if feeling and opening the bag was justified by a reasonable belief that plaintiff was armed, the removal of the wallet from the bag exceeded the scope of a permissible search because it was not necessary to determine whether plaintiff was armed. Dickerson, 508 U.S. at 373. Upon opening the bag and seeing the wallet, a reasonable officer would recognize that the wallet was not a weapon and that he had no reason to suspect that it contained one. Besides, Hernandez stated that he did not remove the wallet to ensure his safety, but "to identify" plaintiff. Doc. 19, Ex. A at 22:50-22:55.

seeking plaintiff's wallet so that he could identify plaintiff.
Doc. 20 at 6; Doc. 19, Ex. A at 22:00-22:30. Hernandez opened
the bag over plaintiff's protests, looked inside, reached in,
and removed plaintiff's wallet. Doc. 20 at 6-7; Doc. 19, Ex. A
at 22:00-22:30. After plaintiff asked whether Hernandez had
taken his wallet out of his bag, Hernandez replied, "To identify
you, that's what I did." Doc. 19, Ex. A at 22:50-22:55.
Hernandez only stated that he was ensuring that plaintiff was
not armed after plaintiff continued to insist that a search for
his driver's license was illegal. Doc. 20 at 7; Doc. 19, Ex. A
at 23:06-23:11.

Although Hernandez correctly insists that officers may
lawfully request identification from suspects during a Terry
stop, Doc. 20 at 13 (citing Hiibel v. Sixth Judicial Dist.
Court, 542 U.S. 177, 185 (2004)), that does not give the officer
authority to conduct an otherwise illegal search. In fact,
although an individual is required to identify himself to police
when he is "lawfully arrested" in Texas, Tex. Penal Code §
38.02(a), the court is unaware of a Texas law requiring an
individual to identify himself during a Terry stop. Defendants
do not provide a basis for Hernandez's purported right to
conduct a search to identify a suspect during a Terry stop, and
Hernandez's supervisor concluded that Hernandez lacked such

authority.  Doc. 19, Ex. B ("Cpl. Hernandez was under the belief the subject had to identify himself after being detained on reasonable suspicion only.  His thought process on this lead [sic] to an unlawful search of the subject's backpack.").

Under the precedent cited by plaintiff, it is beyond debate that Hernandez's search violated plaintiff's rights.  Therefore, Hernandez's qualified immunity does not shield him from the illegal search claim, and such claim should not be dismissed.

VI.

Conclusion

Therefore,

The court ORDERS that the motion to dismiss be, and is hereby, granted in part and denied in part, and that plaintiff's claims and causes of action against Southlake and his illegal detention claim against Hernandez be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims against Southlake.

SIGNED _____April 1_____, 2020.


_____
JOHN McBRYDE
United States District Judge

21